UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

FRANKLIN HERRERA,                            :
                                             :
                  Plaintiff,                 :
                                             :         COMPLAINT
            vs.                              :           WITH
                                             :        JURY DEMAND
S.N.A. AUTO CORP D/B/A SARNO'S AUTO          :
TECH, 295 HILLSIDE AVENUE                    :
CORPORATION, D/B/A SARNO'S AUTO              :
TECH , GRAZIANO ("ROCKY") SARNO,             :
NICK SARNO, ANTONIO RODRIGUES, and           :
MARLON SANDOVAL, jointly and severally       :

                  Defendants.
------------------------------------------------------------------- X


Plaintiff, Franklin Herrera (hereafter "Plaintiff" or "Mr. Herrera"), by his attorneys,

MIRER MAZZOCCHI JULIEN & CHICKEDANTZ, hereby complains against the

Defendants S.N.A. Auto Corp and 295 Hillside Avenue Corporation jointly d/b/a Sarno's

Auto Tech ("SARNO'S AUTO TECH"), Graziano ("Rocky") Sarno ("GRAZIANO

SARNO"), Nick Sarno ("NICK SARNO"), Antonio Rodrigues ("ANTONIO

RODRIGUES"), and Marlon Sandoval ("MARLON SANDOVAL",) (collectively

"Defendants") as follows:

## INTRODUCTION

1.      After an outrageous campaign of gender based stereotyping, homophobic

sexual harassment, and race discrimination by Defendants, including threats of rape, Plaintiff

Herrera has been forever changed. He has lost his livelihood and has suffered a downward

spiral of crippling depression as a result of Defendants' actions.

2.      Throughout his employment PLAINTIFF FRANKLIN HERRERA was subjected to severe and pervasive harassment by his co-workers, Defendants NICK SARNO, the son of the owner of Sarno Auto Tech, as well as by Defendants ANTONIO RODRIGUES AND MARLON SANDOVAL (hereafter collectively the "CO-WORKERS") on account of his gender, his perceived sexual orientation, and his Hispanic race. Moreover, these actions were sanctioned by Defendant GRAZIANO SARNO who was aware of this harassment and yet took no action to curb over the course of more than a year and a half to stop this harassment. Instead he joined in the taunts and ridicule of Plaintiff.

3.      In this employment discrimination action, FRANKLIN HERRERA, an auto mechanic, charges that DEFENDANTS subjected him to a campaign of outrageous and unlawful harassment and ridicule, emasculating him for not living up to Defendants' gender stereotypes, questioning his sexual orientation, and denigrating him based on his Hispanic race. By engaging in regular and persistent name calling, threats of rape and other hostility, Defendants created a severe and pervasive environment of ridicule and insult resulting in a hostile work environment, in violation of 42 U.S.C.§ 1981 and the New York State Executive Law §290 *et seq.*

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1981. This Court has jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. §§1331 and 1337, and has supplemental jurisdiction over plaintiff's State and City claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Eastern District of New York under 29 U.S.C. §1391, as the majority of events giving rise to these claims occurred within this District.

## PARTIES

6.      FRANKLIN HERRERA is a resident of the New York County, at all times relevant hereto, resided in either New York County or Kings County, New York.

7.      Mr. Herrera is an Hispanic male of Ecuadorian origin.

8.      S.N.A. AUTO CORP and 295 HILLSIDE AVENUE CORPORATION are companies registered in the State of New York and jointly doing business as an auto repair shop and gas station under the dba SARNO'S AUTO TECH.

9.      At all times relevant, S.N.A. AUTO CORP and 295 HILLSIDE AVENUE CORPORATION operated as a single integrated entity under the dba SARNO'S AUTO TECH.

10.     At all times relevant, S.N.A. AUTO CORP and 295 HILLSIDE AVENUE CORPORATION employed Plaintiff.

11.     SARNO'S AUTO TECH maintains an office at 495 Hillside Avenue, Williston Park, NY 11596.

12.     Upon information and belief, GRAZIANO SARNO is the President of and has an ownership interest in S.N.A. AUTO CORP and 295 HILLSIDE AVENUE CORPORATION jointly dba as SARNO'S AUTO TECH.

13.     Graziano "Rocky" Sarno is a White male of Italian or Italian American ethnicity.

14.     Graziano Sarno is a resident of Nassau County, New York.

15.     Nick Sarno was an employee of SARNO'S AUTO TECH during all relevant periods.

3

16. Nick Sarno is a White male of Italian American ethnicity and the son on Graziano Sarno.

17. Nick Sarno (assistant mechanic, manager of Sarno's Auto Tech) is a resident of New York State New Hyde Park.

18. Nick Sarno was at various times the temporary manager of SARNO's AUTO TECH during period in which Defendant Graziano Sarno was absent.

19. Antonio Rodrigues was an employee of SARNO'S AUTO TECH during all relevant periods employed as a mechanic.

20. Antonio Rodrigues is a Hispanic male of Dominican Republic ethnicity and nationality and a resident of New York County, New York.

21. Marlon Sandoval was an employee of SARNO'S AUTO TECH during all relevant periods employed as a gas attendant.

22. Marlon Sandoval is a Hispanic male of Guatemalan ethnicity and nationality and a resident of New Hyde Park, New York State.

## FACTUAL ALLEGATIONS

23. FRANKLIN HERRERA(hereafter "Plaintiff") worked within the automotive repair industry for over twenty years as an auto mechanic.

24. Mr. Herrera commenced employment with SARNO'S AUTO TECH, as an auto mechanic on or about November 28, 2013.

25. Plaintiff was hired by Defendant Graziano Sarno and told that he would be reporting to him directly and offered a rate of $147 per day. He was paid weekly.

4

26.     At all times relevant, Defendants engaged in a continuing violation of harassing Plaintiff on account of his Hispanic ethnicity, his Ecuadorean national origin and his gender and perceived sexual orientation.

## BACKGROUND FACTS EVIDENCE OF CONTINUING VIOLATION

### Mr. Herrera's First Day On The Job

27.     On or about November 28, 2013, on Mr. Herrera's first day on the job, the first person he met was gas attendant Marlon Sandoval. Upon meeting Plaintiff, Defendant Sandoval said to Defendant Nick Sarno, "Hey look at the new mechanic, this fucking gay guy!" Defendants proceeded to mock and laugh at Plaintiff, taunting him saying "Look at how he walks!"

28.     Plaintiff was humiliated.

29.     Plaintiff hoped his boss would intervene, but during this incident though Defendant Graziano Sarno was present, he took no corrective action to stop Plaintiff's harassment by his coworker.

30.     Moreover, Defendant Graziano Sarno did not admonish his son and employee but rather remained silent.

31.     At the end of the day Plaintiff returned home very saddened and distraught.

### A Campaign of Racist, Sexist and Homophobic Harassment

32.     Plaintiff's experience on his first day portended the treatment to come.

33.     At all times relevant Plaintiff continued to work alongside and in close quarters with Defendants Marlon Sandoval, Antonio Rodrigues, and Nick Sarno, and the daily harassment continued.

5

34.     Plaintiff was scheduled to start at 7:50 a.m. Defendants Graziano Sarno and Sandoval had an earlier start time. About an hour later Defendant Nick Sarno would arrive. When Defendant Nick Sarno arrived, he would go to see his friend Defendant Sandoval, and on a daily basis like clockwork, around 9 a.m. the taunts would begin. The two men would stand behind the car Plaintiff was at working on and begin to taunt Plaintiff, laughing and saying, "look at this gay guy" and shouting "maricon."

35.     The mockery extended to when Plaintiff took his lunch break where he was ostracized by Defendant Sandoval and Nick Sarno who refused to allow Plaintiff into the break room to eat. Daily Plaintiff was left eating by himself near his toolbox.

36.     This daily treatment became the status quo over the first month of Plaintiff's employment and continued throughout the term of his employment.

## OPERATIVE FACTS

37.     On or about December 20, 2013 Defendants Nick Sarno and Sandoval told Plaintiff, "Ecuadorians are no good!" This continued over the course of the week occurring again on or about December 23, December 30, and on January 4, 2014.

38.     In or around December 2013 and January 2014 Defendant Nick Sarno also told Plaintiff that "Hispanics are stupid." This was said to him on a weekly basis by Defendant Nick Sarno.

39.     Mr. Herrera was demoralized by these taunts and went home feeling depressed.

40.     On many occasions, Plaintiff told his co-workers that he was not gay and asked them to stop the harassment.

6

41. The daily taunts continued for the next several months, often times heard by Defendant Graziano Sarno to no avail.

42. Defendants Nick Sarno and Sandoval continued to say "Look at this fucking gay guy!" "Stupid mechanic!" 'Stupid Ecuadorean!" and "Stupid Hispanic!" on a daily and weekly basis as indicated above.

43. By May 2014 Plaintiff had lost twenty pounds, he could not sleep, he felt nervous, lost his appetite and began to be depressed and withdrawn as a result of the daily discrimination.

44. The daily harassment continued over the summer of 2014 and in the month of September 2014 Plaintiff began to feel intensely isolated and harassed by the daily abuse.

**October Uniform 2014 Incident**

45. In early October 2014 the company gave Plaintiff new uniforms including nametags.

46. Defendant Rodrigues started to wear Plaintiff's extra uniform and tore the nametags out.

47. Plaintiff confronted him, and he denied it.

48. Shortly after stealing Plaintiff's work pants, Defendant Rodrigues took off Plaintiff's pants when he was finished wearing them and started to clean the greasy floor with them.

49. At this time Defendant Rodrigues had also begun calling Plaintiff "gay" and this act of wiping the floor with Plaintiff's clothes was part of a pattern of harassment and debasement of Plaintiff based on Defendants' gender stereotypes and homophobia.

50. Plaintiff was intimidated and humiliated by these actions.

51.     Defendant Rodrigues began to lobby Defendant Graziano Sarno to fire Plaintiff saying, "Get rid of this guy, he's a stupid, no good mechanic!" even though Plaintiff was competently performing his work.

52.     Plaintiff became increasingly depressed.

53.     Over the December 2014 holiday the harassment continued, and Plaintiff was further ostracized, and shunned from holiday parties and other group events at work.

54.     He also became afraid to go to work by himself. He would become fearful and anxious at the thought of going to work and would require his wife to accompany him to the garage starting in January 2015.

**January 2015: Threat of Rape:**

55.     One morning in the beginning of early January 2015 a former employee of SARNO'S AUTO TECH, named Chris (last name unknown), came to the garage to see his old colleagues. Chris had just graduated from the Police Academy.

56.     Chris was dressed in his uniform and after talking with Defendant Graziano Sarno he approached Defendants Nick Sarno and Sandoval who said, "Say something to this guy!"  They all began to laugh at Plaintiff and Chris said, "Pull your pants down, I'm going to shove it up your ass!" Defendants all continued to laugh.

57.     Plaintiff has humiliated, and feared for his safety. He said, "What's going on here? Who is the gay guy? Say it to my face!" The police officer just laughed and left.

58.     Plaintiff was deeply scarred by the threat of being publicly raped by a former worker at his colleagues' urging.

59.     Plaintiff further feared that the customer would use his position as a police officer to threaten, intimidate or violate him with impunity.

60.     Plaintiff felt powerless and degraded.

**January 2015: Sabotaging Plaintiff's Car**

61.     Also in January 2015 Plaintiff began to get flat tires on a regular basis. On or about January 5, 2015 Plaintiff found a nail in his tire upon returning to his car at the end of the workday.

62.     Plaintiff would drop his car at a nearby parking lot at the start of his shift and when he returned he would find his tire flat.

63.     When these flats began to occur approximately once a week, for four weeks, Plaintiff became concerned that the harassment at work was extending to sabotage and interference with his car.

64.     On one occasion in this period, Plaintiff saw Defendant Nick Sarno take several four-inch nails from a bag on his way to an errand at the parking lot. Defendant Nick Sarno saw that Plaintiff had noticed him taking the nails and appeared embarrassed.

65.     On another occasion in this period when he was getting flat tires, Plaintiff's wife was in a parking lot waiting for Plaintiff to get off of work when he saw Defendant Nick Sarno approaching the car. When he saw Plaintiff's wife in the car, their eyes meeting, Defendant Nick Sarno turned back.

66.     Upon information and belief, Defendant Nick Sarno was placing nails in Plaintiff's tires as part of his racist, gender based and homophobic harassment.

67.     In March 2015, Plaintiff's wife took her new car to a mechanic and was told that her exhaust system appeared to have been tampered with so that carbon monoxide was not properly being eliminated through the exhaust.

9

68.    The mechanic confirmed that the problem with the car was not a routine defect but appeared to have been the result of intentional tampering.

69.    On information and belief Defendants tampered with Plaintiff's car so as to cause carbon monoxide to be released into the cabin of the car while operated.

**Continuing Pattern of Harassment Throughout 2015**

70.    In 2015 Plaintiff began to become more and more depressed.

71.    He had trouble leaving the house and would become anxious before going to work.

72.    Plaintiff would come home angry, frustrated and humiliated.

73.    He continued to be excluded him from lunches, socializing and general conversation by Defendant Nick Sarno and Sandoval and to be taunted by them daily and weekly as a "stupid Hispanic" and a "gay guy."

74.    On or about June 10, 2015, Plaintiff's wife went to pick up her husband from work and was waiting in a car outside of the workplace.  She observed the Defendants Nick Sarno and Sandoval and Defendant Graziano Sarno laughing and pointing at her husband while they stated to him loudly, "Gay Frankie"

75.    On or about June 24, 2015, Plaintiff's psychological state became so changed by Defendants constant hatred, harassment and ridicule that he sought counseling.

76.    In or about July 2015, Defendant Nick Sarno came out of the bathroom and yelled at Plaintiff, look at this "gay mother-fucker" by pushing him with force on his back.

77.    On or about FRANKLIN HERRERA's last day of employment with Defendants was July 29, 2015 as he could no longer suffer the daily abuse.

78.     Throughout his tenure Plaintiff faced derogatory anti-gay epithets and threats on a daily basis creating an objectively severe and pervasive hostile work environment based on his gender/perceived sexual orientation, which caused his severe distress throughout the duration of his employment.

79.     Throughout his tenure Plaintiff faced derogatory anti-Ecuadorean epithets on a regular basis creating an objectively severe and pervasive hostile work environment which caused his severe distress throughout the duration of his employment.

80.     In July 2015 Plaintiff was diagnosed with PTSD resulting from his employment by Defendants.

**FIRST CAUSE OF ACTION**
**(VIOLATION OF 42 U.S.C. § 1981—EQUAL BENEFITS AGAINST ALL DEFENDANTS—DISCRIMINATION, HARASSMENT AND RETALIATION ON THE BASIS OF HIS HISPANIC RACE)**

81.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

82.     By the actions described above Defendants have denied Plaintiff on the basis of his Hispanic race the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by White citizens of the United States, in violation of 42 USC §1981 by subjecting him to discrimination and harassment on the basis of his protected status as Hispanic.

83.     As a direct and proximate result of Defendants unlawful discriminatory conduct in violation of the 42 U.S.C. § 1981 Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as

11

well as emotional pain and suffering, for this he is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
## (NATIONAL ORIGIN/RACE DISCRIMINATION UNDER THE NYSHRL— HOSTILE WORK ENVIRONMENT AGAINST ALL DEFENDANTS)

84.    Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

85.    Defendants have discriminated or aided and abetted such discrimination against Plaintiff on the basis of his Hispanic race and/or Ecuadorean national origin in violation of the NYSHRL by subjecting Plaintiff to an environment permeated with racially hostile statements and epithets such that he was subject to a racially hostile work environment.

86.    As a direct und proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

87.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for this he is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION

12

**(SEXUAL HARASSMENT AND GENDER AND PERCEIVED SEXUAL ORIENTATION DISCRIMINATION UNDER THE NYSHRL—HARASSMENT AND HOSTILE WORK ENVIRONMENT AGAINST ALL DEFENDANTS**

88.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

89.     All Defendants have discriminated or aided and abetted such discrimination against Plaintiff on the basis of his gender by failing to adhere to their gender stereotypes, their perception of his sexual orientation as gay in violation of the NYSHRL by subjecting Plaintiff to sexual harassment and a hostile work environment on such bases.

90.     As a direct und proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

91.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for this he is entitled to an award of monetary damages and other relief.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff requests relief as follows:

A. An order declaring that the actions of Defendant alleged in this complaint violate 42 USC § 1981 and the NYSHRL;

13

B. An award of compensatory damages in an amount that would fully compensate Plaintiff, plus prejudgment interest, for the economic loss, mental anguish, emotional pain and suffering, humiliation, embarrassment, emotional distress, feelings of paranoia and distrust, depression, low self-esteem, sleep deprivation, loss of enjoyment of life and interference with life's daily activities as well as continued stress and anxiety caused by Defendants' violations of the law alleged in this complaint, in an amount to be determined at trial;

C. An award of punitive damages to Plaintiff in an amount that would punish Defendants for the willful, wanton, reckless misconduct alleged in this Complaint that would effectively deter Defendants from future discrimination and other unlawful behavior, in an amount to be determined at trial.

D. An award of all penalties available under the applicable laws;

E. An award of reasonable attorneys' fees, the fees and costs of experts, and the costs of this action; and

F. Such other relief as this Court deems just and equitable.

## JURY TRIAL

Plaintiff demands a jury trial for all causes of action and claims for which he has a right to a jury trial on all issues of facts and damages.

Dated: New York, New York
December 22, 2017

Respectfully submitted,

_____
Jeanne Mirer
Ria Julien
MIRER MAZZOCCHI JULIEN &
CHICKEDANTZ, PLLC

14

150 Broadway
New York, NY 10038
Tel: 212 231-2235
rjulien@mmsjlaw.com
*Attorney for Plaintiffs*